UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARTHA S. PAIGE,                    :
                                    :   NO. 1:08-CV-00518
       Plaintiff,                   :
                                    :   **OPINION AND ORDER**
                                    :
       v.                           :
                                    :
                                    :
KIMBERLY COYNER, et al.,            :
                                    :
       Defendants.                  :
                                    :
                                    :
                                    :

          This matter is before the Court on Defendants Kimberly
Coyner and the Warren County Board of Commissioners' Motion for
Summary Judgment (doc. 39); Plaintiff's Response (doc. 58);
Defendants' Reply (doc. 61); Plaintiff's Surreply (doc. 65); and
Defendants' Response to Plaintiff's Surreply (doc. 67).  For the
reasons stated herein, the Court GRANTS in part and DENIES in part
Defendants' Motion for Summary Judgment (doc. 39).

**I. Factual and Procedural Background**

          Plaintiff Martha Paige worked as an accountant with
Bunnell Hill Development Company from March of 2002 until August
16, 2007, when she was terminated.  Bunnell Hill is a private
commercial development company based in Warren County, Ohio.  On
August 6, 2007, Plaintiff attended a meeting of the board of
Defendant Warren County Port Authority ("Port Authority").  During

the meeting, Plaintiff made public comments concerning a proposed interstate highway development project, expressing concerns about the project on behalf of members of the Residents' Association of West Central Warren County, of which she was president. Specifically, Plaintiff asked the board whether it should consider if the project benefits the residents of Warren County in analyzing the potential development. Defendant Kimberly Coyner ("Coyner"), Warren County's Economic Development Director, allegedly displayed a "negative reaction" to Plaintiff's comment, appearing greatly annoyed and refusing to make eye contact with Plaintiff.

On August 13, 2007, Coyner contacted Plaintiff's employer by telephone and spoke with Greg Bartley, the Executive Vice President of Bunnell Hill. During this conversation, Coyner stated that during the board meeting Plaintiff introduced herself as an employee of Bunnell Hill and spoke negatively about the establishment of the Port Authority and about development. Coyner indicated that the purpose of the call was to seek clarification on Bunnell Hill's commitment to the development of the region. Bartley assured Coyner that Bunnell Hill was committed to the development of the region and later drafted a letter for Coyner's signature, memorializing their conversation. Three days later, the day Bunnell Hill received that letter from Coyner, Plaintiff was terminated. Bunnell Hill management specifically stated that one of the reasons for her termination was that she had used Bunnell

Hill's name and company resources in taking a public stand against development.

Plaintiff filed a complaint against the Warren County Board of Commissioners ("the Board"), the Port Authority, and Coyner. In the complaint, Plaintiff raises a claim under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments and, under Ohio state law, claims of defamation and tortious interference with an employment relationship (doc. 1). Defendant Port Authority subsequently filed a motion to dismiss, arguing that it was immune from Plaintiff's state-law claims under Ohio law and that Plaintiff's Section 1983 claim should be dismissed because Plaintiff failed to allege any injury that occurred under color of state law.

On February 11, 2009, the Court issued an Opinion and Order granting Defendant Port Authority's motion to dismiss (doc. 19). Applying the nexus and state-compulsion tests, as articulated in Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982), the Court determined that Plaintiff's allegations were insufficient to establish that Bunnell Hill's decision to fire Plaintiff could be fairly construed as state action attributable to the Port Authority. Reasoning that the same basis for dismissal applied to Plaintiff's claims against Coyner and the Board, the Court also dismissed these claims.[1]

---

[1]The Court also found that Plaintiff's state-law claims against the Port Authority should be dismissed in light of the

-3-

On appeal, the Sixth Circuit reversed the Court's decision. The Sixth Circuit held that Blum was inapplicable, finding that "Blum's tests are limited to suits where the private party is the one allegedly responsible for taking the constitutionally impermissible action." Paige v. Coyner, 614 F.3d 273, 280 (6th Cir. 2010). The court of appeals found that the Court thus erred in framing the issue as whether Bunnell Hill's actions in firing Plaintiff were attributable to the state. Instead, the Sixth Circuit found that because Coyner worked on behalf of local government entities, Coyner is a state actor who allegedly violated Section 1983 by making false statements regarding Plaintiff in retaliation for Plaintiff's criticism of the proposed inter-state project. Id. Furthermore, the Sixth Circuit found that, as a state actor, Coyner's liability for Plaintiff's termination depends on whether it was a reasonably foreseeable consequence of making the phone call. Id., citing Powers v. Hamilton County Pub. Defender Comm'n, 501 F.3d 592, 609 (6th Cir. 2007)).

After a review of Plaintiff's First Amendment retaliation claim, the Sixth Circuit found that Plaintiff's allegations were sufficient to survive a Rule 12(b)(6) motion. Id. at 282-83. The

immunity afforded under Ohio Rev. Code § 2744.02(A)(1) and declined to exercise supplemental jurisdiction on the remaining state-law claims pertaining to Coyner and the Board of Commissioners.

court of appeals also found that Plaintiff's allegations regarding the Port Authority and Board of Commissioners should survive the motion to dismiss in light of her allegations that Coyner "acted pursuant to the official policies of Defendants Warren County Board of Commissioners and Warren County Port Authority in that Coyner has final policy making authority" for those entities. Id. at 284.

The Sixth Circuit remanded the case, finding that Plaintiff had sufficiently alleged facts to state a claim for relief under Section 1983 against all three Defendants. Id. After completion of discovery, Defendants Coyner and the Warren County Board of Commissioners filed the instant Motion for Summary Judgment (doc. 39), which is ripe for the Court's decision.[2]

## II. Defendants' Motion for Summary Judgment

Defendants Coyner and the Board have filed a motion for summary judgment with respect to Plaintiff's First Amendment retaliation claim and state law claims for defamation and tortious interference. Defendants first argue that, based on the allegations of the complaint and the undisputed facts, Plaintiff cannot establish a causal relationship between Coyner's August 13, 2007 phone call to Bunnell Hill and Plaintiff's subsequent termination (doc. 39). Defendants contend that, prior to learning of Coyner's telephone call, Bunnell Hill was already aware of

---

[2] Defendant Warren County Port Authority also filed a motion for summary judgment (doc. 40), which was terminated upon the voluntary dismissal of the Port Authority as a defendant in this matter (doc. 63).

Plaintiff's comments at the Port Authority meeting, having read "a newspaper article describing Martha Paige's anti-development comments at the August 6, 2007 Port Authority Meeting" (Id.). Furthermore, Defendants argue that Bunnell Hill had made the decision to fire Plaintiff as early as May 16, 2007, based on her "continuing poor work performance." (Id.). Defendants further assert that they are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim and statutory immunity on the state law defamation and tortious interference claims.

Plaintiff argues that Defendants' motion for summary judgment should be denied because material issues of fact exist with respect to the reasons for Plaintiff's termination, contending that Defendants support their position by citing to deposition testimony of Bunnell Hill executives "as if such testimony reflects the unvarnished truth," and that Defendants are not entitled to either qualified or statutory immunity (doc. 58).

## III. Legal Standard and Analysis

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962);

-6-

LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir.1992)(per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)(internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of  material fact[.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir.

1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-40 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir.1989)(internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F .2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-55 (6th Cir. 1991).

## A.    First Amendment Retaliation

In order to prevail on her First Amendment retaliation claim Plaintiff must demonstrate (1) that Plaintiff was engaged in a constitutionally protected activity; (2) that Defendants' adverse action caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of Plaintiff's constitutional rights. <u>Bloch v. Ribar</u>, 156 F.3d 673, 678 (6th Cir. 1998). "[I]f the plaintiff establishes the three elements, the burden of production then shifts to the defendants to show that their actions would not have been different absent the plaintiff's protected conduct." <u>Smith v. Craven</u>, 61 F.App'x 159, 161 (6th Cir.2003) (<u>citing</u> <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 400 (6th Cir. 1999) (en banc)).

As noted previously, Defendants base their motion for summary judgment on the claim that Plaintiff is unable to demonstrate a genuine issue of material fact with regard to causation.  In other words, Defendants contend that Plaintiff would have been fired notwithstanding Coyner's telephone call, and they are therefore entitled to judgment as a matter of law.

In support of their motion, Defendants argue that the record "proves that Bunnell did nothing to Paige in response to the telephone call" (doc. 61).   Bunnell Hill President/CEO Mike

Schueler testified that he was the sole person who made the decision to terminate Plaintiff and that Coyner's phone call played no part in the decision (doc. 39). Schueler further indicated that, before Coyner's phone call, he had already read a newspaper article detailing the comments Plaintiff made during the Port Authority meeting and that Plaintiff's termination was already in the works as early as May 16, 2007, based on poor work performance issues (Id.). Bunnell Hill CFO and Treasurer Ted Gilbert testified that Schueler had been very dissatisfied with Plaintiff's accounting work, which resulted in a sit-down meeting with Plaintiff in March of 2007 (Id.). Defendants also point to a May 15, 2007 memo evidencing Schueler's dissatisfaction with Plaintiff's work performance (Id.). Finally, Gilbert testified that Schueler directed him to terminate Plaintiff prior to August 16, 2007, and that he fired Plaintiff on order from Schueler for Plaintiff's poor work performance (Id.).

According to Defendants, the Court should "refuse to question Schueler's testimony regarding why he terminated Paige" (doc. 61). Defendants argue that in Kelly v. Warren County Board of Commissioners, 396 F. App'x 246 (6th Cir. 2010), also a First Amendment retaliation case, the Sixth Circuit determined that the plaintiff's circumstantial evidence did not create a genuine issue of material fact in the face of the unequivocal, stated reasons for why the defendants withdrew the plaintiff's conditional hiring. In

Defendants' view, the record in this case likewise proves that Coyner's phone call had nothing to do with Plaintiff's termination, and they should be granted summary judgment.

In response, Plaintiff asserts that "the issue of causation in this case is unquestionably a jury question," arguing that a genuine issue of material fact exists with regard to whether Plaintiff would have been fired but for Coyner's phone call (doc. 58). Plaintiff first contests Defendants' claim that Schueler had already learned of Plaintiff's comments at the Board meeting in a newspaper article prior to Coyner's call (Id.). Plaintiff notes that no newspaper article has been produced, no witness has testified that a reporter was present at the Board meeting, nor does the sign-in sheet indicate that a reporter was present. (Id.). In any event, Plaintiff argues that she did not sign in or identify herself as a representative of Bunnell Hill, so Schueler could not have read a newspaper article reporting that she did. (Id.).

Plaintiff further contends that the record does not support Defendants' claims that Bunnell Hill made the decision to terminate Plaintiff months prior to Coyner's call or that her termination was based on poor work performance (Id.). Plaintiff argues that the record strongly suggests that Bunnell Hill had no real objection to Plaintiff's work performance (Id.). Noting that she had consistently received annual salary increases and had never

received warnings regarding job performance, Plaintiff argues that a "reasonable fact-finder could conclude that the alleged concerns about [her] job performance were newly created by Bunnell Hill management _after_ the August 13 phone call to justify her abrupt termination" (_Id_.)(emphasis in original).

Finally, Plaintiff argues that "although Defendants cast Schueler as the final decision-maker for the termination," the record indicates that Gilbert, Plaintiff's direct supervisor, was displeased upon learning of Plaintiff's alleged comments at the board meeting and recommended Plaintiff's termination immediately after learning of Coyner's phone call (_Id_.). Plaintiff further notes that information relayed in Coyner's call, her "public stand against development" and use of the company name to support her position, was specifically referenced as a basis for her termination (_Id_.). Plaintiff contends that "even if one accepted Defendants' erroneous position that Schueler had decided to fire Ms. Paige in May 2007, the record evidence strongly supports the conclusion that her termination was _caused_ by Gilbert's recommendation, which was a direct result of Coyner's phone call" (_Id_.).

The first two prongs of the Court's analysis with respect to Plaintiff's First Amendment retaliation claim are not in dispute: Plaintiff speaking at the meeting was a constitutionally protected activity, and her termination would chill a person of

ordinary firmness from continuing to engage in that activity. <u>See</u> <u>Bloch</u>, 156 F.3d at 678. As to the third prong, whether her termination was motivated at least in part as a response to the exercise of Plaintiff's constitutional rights, the Court finds that a genuine issue of fact exists with respect to the causal connection between Coyner's phone call and Plaintiff's termination, making summary judgment inappropriate. Simply put, credibility issues exist for the jury including, for example, whether Schueler already knew of Plaintiff's activity via some newspaper article or whether that assertion is false; when Schueler actually decided to terminate Plaintiff's employment and whether the proffered reason for her termination-poor performance-was the actual reason or a fabricated, post-hoc, pretextual reason; and whether Schueler's decision was motivated or influenced by Gilbert and what effect the call had on Gilbert.

Defendants' reliance on <u>Kelly</u> is misplaced. In <u>Kelly</u>, the Sixth Circuit determined that the plaintiff failed to offer any direct or circumstantial evidence in support of his claim. <u>See</u> <u>Kelly</u>, 396 F. App'x at 250 ("But Kelly presented insufficient evidence to raise an inference of causation and his mere speculation does not create a genuine issue of material fact to overcome summary judgment."). In contrast, here Plaintiff has offered sufficient evidence-not mere speculation-such that a reasonable jury could conclude that Plaintiff would not have been

terminated at that time but for Coyner's phone call. The Court

declines, as is urged by Defendants, to simply credit the testimony

offered in support of their motion. See Adams, 31 F.3d at 378

(noting that on summary judgment, ["t]he judge may not make

credibility determinations or weigh the evidence"). Instead,

viewing the entire record and the facts in the light most favorable

to Plaintiff, as is required on summary judgment, the Court finds

that a genuine issue of material fact exists as to whether

Plaintiff was terminated because of Coyner's phone call or whether

Bunnel Hill's actions would not have been different absent

Plaintiff's protected conduct.[3]  See Patton, 8 F.3d at 346;

Thaddeus-X, 175 F.3d at 400; Anderson, 477 U.S. at 251-52.

_____

[3] Defendants have also filed a notice of supplemental authority,
requesting that the Court consider a recent Sixth Circuit
decision in Fritz v. Charter Township of Comstock, No. 10-1973,
2012 WL 499540 (6th Cir. Feb. 15 2012). Although the plaintiff
in Fritz alleged that her termination was motivated by a township
supervisor making "disparaging and false statements about her in
retaliation for Plaintiff exercising her First Amendment rights
to speak critically of them in the press and in public meetings,"
id. at *3, the case is distinguishable from the instant case and,
therefore, does not alter the above analysis. Most notably, the
Sixth Circuit specifically distinguished the facts presented in
this case from Fritz. The court noted that "[u]nlike the facts
presented in Paige," the alleged defamatory comments were made in
response to an investigation undertaken by the plaintiff's
employer and included responses to public criticisms made by the
plaintiff regarding a township ordinance. Furthermore, the Sixth
Circuit noted that there existed no dispute that it was the
plaintiff's employer and not the public officials that responded
to plaintiff's conduct and initiated the investigation. The
court found no causal connection between the protected speech and
the termination, finding no evidence of a threat directed from
the township supervisor to plaintiff's employer or any authority
to take action against plaintiff's authority.

**B.    Qualified Immunity**

Defendants next urge the Court to find that Defendant Coyner is entitled to qualified immunity. Government officials like the Coyner are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). This doctrine of qualified immunity is "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 129 S.Ct. 808, 815 (2009). In determining whether Coyner is entitled to qualified immunity, the Court asks two questions: Viewing the facts in the light most favorable to Plaintiff, has she shown that a constitutional violation has occurred? Was the right clearly established at the time of the violation? Id. at 818 (upholding the two-part analysis of Saucier v. Katz, 533 U.S. 194 (2001) but no longer mandating the sequence of the prongs).

Defendants assert that Coyner is entitled to immunity because Plaintiff has not shown that the constitutional right she claims was violated was clearly established at the time (doc. 39). Specifically, they frame the question before the Court as "would a reasonable official in Coyner's position know that it would violate the Constitution to contact Bunnell Hill or ask if their position was voiced by Paige?" (Id.). As support for their assertion that

no reasonable official would know that such action violates the Constitution, Defendants contend that there is no binding Sixth Circuit law on point and then proceed to distinguish this case from the state-action cases presented by Plaintiff on appeal (Id.).  In reply, Defendants contend that Coyner had a reasonable, non-retaliatory business reason for making the call–to clear up her confusion regarding Bunnell Hill's position on development–and that she could not have reasonably known that the phone call could be seen as violative of any constitutional right (doc. 61).  Among other things, they point to Coyner's deposition testimony, in which she asserts that she was confused about Plaintiff's intentions at the meeting, and she called Bunnell Hill to clear up that confusion.

In contrast to Defendants' framing of the question before the Court, Plaintiff suggests that the inquiry is better stated as "would a reasonable official in Coyner's position know that it would violate the Constitution to make false statements about a citizen to her employer in retaliation for comments the citizen made at a public meeting?" (doc. 58).  Plaintiff points to evidence in the record which, she contends, shows that Coyner's statements about Plaintiff to Bunnell Hill were false, which she argues shows that Coyner's intent in making the call was not innocent.

After careful consideration of the arguments presented by both parties, the Court finds that summary judgment is improper

because resolution of whether Defendants are entitled to qualified immunity hinges on a determination of fact. See Poe v. Haydon, 853 F.2d 418, 425-26 (6th Cir. 1988)("[S]ummary judgment would not be appropriate if there is a factual dispute ( i.e., a genuine issue of material fact) involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights."). Specifically, despite Defendants' attempt to frame it otherwise, the issue of Coyner's motivation and intent is at issue here. And it is an issue of fact, which should be decided by the jury. A reasonable jury could, as asserted by Plaintiff, find that, despite Coyner's protestations to the contrary, she was motivated by anger at Plaintiff's public statements and sought to retaliate against her. To come to such a finding, the jury could determine that the evidence shows that Coyner lied to Bunnell Hill about what Plaintiff said and draw an inference of a retaliatory motive from those lies. For example, Greg Bartley testified that he understood from Coyner in the phone call that Plaintiff's comments were "negative", "antagonistic", and derogatory about development and that Plaintiff opposed the work of the Port Authority and opposed local development. In addition, he testified that Coyner was "distraught over the fact that [Plaintiff's] presence there came across as being a representative of Bunnell Hill Development" and that he understood from Coyner that Plaintiff

introduced herself as being an employee of Bunnell Hill when she made her public address (doc. 43). Plaintiff has adduced evidence painting a different picture of what happened at the meeting, evidence which would support her assertion that she did not publicly introduce herself as being with Bunnell Hill, that she consistently and clearly was speaking as a private individual, and that her comments were not anti-development or globally against the work of the Port Authority. If a jury believed Plaintiff's version of events from the meeting (which, the Court notes, is in many respects supported by Coyner's own deposition testimony), and believed Bartley's characterization of the phone call, then the jury could reasonably determine that Coyner lied on that phone call with the intent to do Plaintiff harm and that such harm was a foreseeable result of the call.

In short, because "retaliatory intent proves dispositive of [Coyner's] claim to qualified immunity," summary judgment is inappropriate. <u>Center for Bio-Ethical Reform, Inc. v. City of Springboro</u>, 477 F.3d 807, 825 (6th Cir. 2007).

### C.    State Law Claims

Finally, Defendants assert that they are statutorily immune from Plaintiff's state-law claims. Specifically, Defendant Warren County Board of Commissioners claims immunity under Ohio Revised Code Section 2744.02, noting that both Ohio courts and federal courts applying Ohio law have ruled that both defamation

and tortious interference claims are intentional torts, against which Ohio political subdivisions are immune (doc. 39). Thus, as a political subdivision, Defendant Warren County Board claims immunity from Plaintiff's state-law claims.

The Court agrees. Ohio Revised Code § 2744.02(A)(1) provides that, with certain exceptions, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." Because Plaintiff's defamation and tortious interference claims are intentional torts, dismissal of these claims against Defendant Warren County Board is appropriate because, as a political subdivision, the Defendant Board is statutorily immune from intentional tort claims. See, e.g., Wilson v. Stark Cty. Dep't of Human Servs., 70 Ohio St.3d 450, 452, 639 N.E.2d 105, 107 (Ohio 1994).

Defendant Coyner argues that she is immune from Plaintiff's state law claims of defamation and tortious interference with an employment relationship under Ohio Revised Code § 2744.03(A)(6) (doc. 39). Under that section of Ohio's code, an employee of a political subdivision is immune from liability for any act in connection with a governmental or propriety function unless the employee's acts were manifestly outside the scope of the

employee's employment; were committed with malicious purpose, in bad faith, or in a wanton or reckless manner; or if civil liability is expressly imposed upon the employee by a section of the Revised Code.

According to Coyner, Plaintiff cannot demonstrate that Coyner acted recklessly, with malice or in bad faith (doc. 39). In support of her argument, Coyner contends that she called Bunnell Hill at the suggestion of Warren County Commissioner Pat South, in order to confirm whether Plaintiff spoke as a private citizen or on behalf of Bunnell Hill (<u>Id.</u>). According to Coyner, her confusion over whether Plaintiff spoke in an individual capacity or for Bunnell Hill was warranted based on Plaintiff signing into the Port Authority meeting with her Bunnell Hill email address. Furthermore, Coyner asserts that she never requested that any action be taken against Plaintiff and, in fact, specifically indicated that she did not want Plaintiff to get in trouble based on the phone call (<u>Id.</u>).

In response, Plaintiff asserts that the record contains sufficient evidence in order to establish Coyner's requisite intent under Ohio Rev. Code § 2744.03(A)(6) (doc. 58). Plaintiff argues that the record demonstrates that Coyner had no reason to call Bunnell Hill, noting that Coyner's testimony indicates that it was only after reviewing the sign-in sheet–which Plaintiff signed as a private citizen–that Coyner claims to have questioned Plaintiff's

role at the meeting. Furthermore, Plaintiff argues that to the extent that Coyner was confused about Plaintiff's role at the meeting, Coyner could have called her instead of her employer and that any assertions that Coyner was confused about Bunnell Hill's position vis-a-vis development are disingenuous on their face given the evidence in the record showing Bunnell Hill's public, pro-development position as one of the leading developers in the area (Id.). In addition, Plaintiff disputes whether Coyner contacted Bunnell Hill on the suggestion of Pat South, noting that Coyner did not mention such a conversation in her deposition.

Coyner further contends that even if her comments to Bunnell Hill could be considered defamatory, Coyner possessed a qualified privilege to make the call as a matter of Ohio law (Id.). According to Coyner, Ohio law treats the communication between Coyner, as Warren County Economic Development Director, and Bunnell Hill, one of Warren County's largest commercial developers, as a privileged conversation. As such, Coyner claims that Plaintiff must prove that Coyner acted with "actual malice" in order to defeat the privilege and that she has failed to do so.

With regard to this assertion of a privileged communication, Plaintiff argues that Coyner has cited to no authority to support the "novel position that this privilege encompasses a conversation between a county official and a commercial developer" (doc. 58). In any event, Plaintiff contends

that even if the Court finds that the conversation was privileged, Plaintiff has demonstrated actual malice in order to overcome such a privilege, noting that "malice" in this context means "acting with a knowledge that the statements made are false or acting with disregard to their truth or falsity" (Id., quoting Doyle v. Fairfield Machine Co., Inc. (11th Dist. 1997), 120 Ohio App.3d 192, 697 N.E.2d 667, 684).

First, the Court declines Coyner's invitation to extend Ohio's qualified privilege regarding potentially defamatory statements to the facts of this case. Ohio's qualified privilege doctrine bars defamation actions based on communications made in good faith, on any subject matter in which the person communicating has a duty to inform others concerning matters in which the parties have an interest. See, e.g., Johnson v. Lakewood Hosp., 1997 WL 547968 (Ohio App. Ct., Sept. 4, 1997). As Plaintiff notes, Defendants have offered no authority for the proposition that the privilege should apply to the phone call from Coyner to Bunnell Hill, and the Court has been unable to find any such authority on its own.

With respect to whether Coyner is entitled to statutory immunity, the Court finds that she is not. As discussed above, Coyner's intent in making the call is a question of fact for the jury. Given the inferences that could reasonably be drawn from the evidence, a jury could find that she acted recklessly, with malice

or in bad faith such that she cannot avail herself of the statutory immunity.

**IV.     Conclusion**

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment as it applies to Plaintiff's state-law claims against Defendant Warren County Board of Commissioners and DENIES it in all other respects.  This matter is SET for a status conference on April 19, 2012, at 2:00 P.M.


                    SO ORDERED.

Dated: March 29, 2012          /s/ S. Arthur Spiegel
                               S. Arthur Spiegel
                               United States Senior District Judge